IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-0404-CR-W-NKL |
| | ) | |
| DUANE C. CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Duane Carter's ("Carter") Motion for Judgment of Acquittal Or, In the Alternative, For A New Trial [Doc. # 106]. For the reasons set forth below, the Court denies Carter's Motion.

Carter was charged in a Superseding Indictment with being a felon in possession of a firearm (Count I); interference with interstate commerce by means of robbery (Count II); and using a firearm in relation to a crime of violence (Count III) [Doc. # 69]. After a jury trial, Carter was convicted of the charge in Count I and acquitted of the remaining Counts. *See* Completed Verdict Form [Doc. # 102].

**I.      Carter's Motion for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29© states, "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29©. The Rule does not require that the defense counsel make a prior motion during the course of the trial. *Id.* at (3). The Court should deny a motion for judgment of acquittal "where

1

the evidence, viewed in the light most favorable to the government, is such that a reasonable jury could have found each of the essential elements of the crime beyond a reasonable doubt." *United States v. Moyer*, 182 F.3d 1018, 1021 (8th Cir. 1999) (citations omitted). Carter raises several challenges to his conviction, including the sufficiency of the evidence, two evidentiary issues, and the denial of his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).

### A. Sufficiency of the Evidence

The Government charged Carter with one count of being a felon in possession of a firearm. The charge has three elements: (1) that the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant thereafter knowingly possessed a firearm; and (3) the firearm was transported across a state line at some time during or before the defendant's possession of it. 18 U.S.C. § 922(g).

The Government and Carter stipulated to the first and third elements of the offense and they are not the subject of Carter's Motion. Instead, Carter alleges there was insufficient evidence to demonstrate that he possessed the firearm at issue.

The Government does not need to present evidence that Carter had actual possession of the firearms nor does the jury need to make such a finding to support its verdict; instead, the jury must find only that Carter constructively possessed the firearms. *United States v. Carman*, 314 F.3d 321, 325 (8th Cir. 2002) (holding that constructive possession is sufficient for conviction under 18 U.S.C. § 922(g)). Constructive

possession of a firearm is established if a person has both the power and the intention to exercise control over a thing, either directly or indirectly or through another person or persons.  *United States v. Johnson*, 18 F.3d 641, 647 (8th Cir. 1994).

The Court finds that a reasonable jury could have found, beyond a reasonable doubt, that Carter knowingly possessed the firearm based on the evidence presented at trial.  Carter listed the address where the firearm was found as his residence when he registered with his probation officer.  Additionally, Carter's clothes, personal items and his mail were found in the same location as the firearm.  When confronted with the allegation that it was his firearm, Carter made incriminating statements indicating that he had actually possessed the firearm in the past, including "just because my fingerprints are on [the gun] doesn't mean I own it" and "I'm not the only one who touched it, there are other fingerprints on it, too."  Carter's inculpatory statements, in addition to the other evidence tying him to the residence, was a sufficient basis for the jury to find that he constructively possessed the firearm.  Furthermore, the testimony of Carter's sister and Carter's girlfriend demonstrated that he was a frequent visitor to the home, and the nature of his relationship with these women who leased the apartment suggests that he could have regular access to the firearm even if he were not a permanent resident.

**B. Evidentiary Issues**

### 1. *Carter's Motion to Suppress*

Carter alleges that this Court improperly denied his motion to suppress the physical evidence that was the product of the search.  However, the evidence at trial

3

demonstrated that Carter's sister consented to the search of the residence where the firearm was located. While Carter's sister denied that her consent was given voluntarily, officers testified that her consent was given knowingly and voluntarily. The officers' testimony was corroborated by the form that Carter's sister signed, which outlined her consent to the search of the residence.

The Eighth Circuit holds, "It is well settled that the Fourth Amendment does not prohibit the warrantless search of a person's home or other property if the police have obtained the voluntary consent of a third party with common authority over the premises or property." *United States v. Elam*, __ F.3d __, 2006 WL 721795 at *1 (8th Cir. Mar. 23, 2006) (citation omitted). The credible evidence at trial demonstrated that Carter's sister and the other resident of the home consented to the search of the residence. Thus, it was not error for this Court to deny Carter's Motion to Suppress.

### 2. *Horalek's Testimony*

Carter challenges the admission of the testimony of Detective Craig Horalek ("Horalek"). According to Carter, the Government failed to present a sufficient foundation for the admission of the testimony.

Horalek testified that he spoke with Carter on the telephone when Carter called the Police Department to inquire whether there was an outstanding warrant for his arrest. The testimony at trial reflected that Carter's sister advised him to call Horalek and that, when Horalek took the call, the caller identified himself as Carter. Thus, there was a sufficient foundation for admitting Horalek's testimony that he spoke with Carter in May

4

2004.

## C. Carter's *Batson* Challenge

The Equal Protection Clause forbids a prosecutor from using peremptory challenges during voir dire to exclude an otherwise qualified member of the panel from serving on the jury based solely on the member's race. *Batson*, 476 U.S. at 86. To establish a *Batson* violation, a defendant must first establish a *prima facie* case of purposeful discrimination in the selection of the jury panel. *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995). After the defendant has established the *prima facie* case, the prosecutor then has "the burden of articulating a clear and reasonably specific neutral explanation for removing a venireperson of the same race as the defendant." *Id.* (citing *United States v. Cloyd*, 819 F.2d 836, 837 (8th Cir. 1987)).

Carter has not established a *prima facie* case of purposeful discrimination because he has failed to show that African Americans were systematically struck by the Government. In addition, Carter has failed to demonstrate that the Government's race-neutral explanation is pretextual. The venireperson at issue was a young African-American male, which is the same race as Carter. During voir dire and in its Opposition to Carter's pending Motion, the Government states that it disqualified the venireperson because he was young, dressed inappropriately for a court proceeding, was sleeping during a portion of the questioning, and was unemployed. Regarding his clothing, the venireperson was wearing baggy clothes that did not fit and a hat inside the courtroom.

The Government's stated reasons for rejecting the venireperson are facially

5

legitimate. *See United States v. Thomas*, 971 F.2d 147, 150 (8th Cir. 1992) (denying *Batson* challenge where venireperson rejected based on his job and other African-Americans were selected for jury panel); *United States v. Hughes*, 911 F.2d 113 (8th Cir. 1990) (denying *Batson* challenge where venireperson was young and shabbily dressed and other African-Americans were selected for jury panel). Accordingly, the Court did not err in denying Carter's *Batson* challenge.

**II.     Carter's Motion for New Trial**

Federal Rule of Criminal Procedure 33(a) states, "[T]he court may . . . grant a new trial [to a defendant] if the interest of justice so requires." This standard "requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial." *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988). The trial court has broad discretion to grant or deny a motion for new trial based upon the weight of the evidence, and "the trial court can rely on its own reading of the evidence--it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992) (quotation omitted). The authority to grant new trials, however, "should be exercised sparingly and with caution . . . ." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). A new trial should be granted only "if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Jiminez-Perez*, 238 F.3d 970, 974 (8th Cir. 2001) (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

The Court finds no basis for ordering a new trial. Mr. Carter had a fair trial.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Carter's Motion for Judgment of Acquittal Or, In the Alternative, For A New Trial [Doc. # 106] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: April 24, 2006
Kansas City, Missouri

7